**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| -vs- ) | No. CR-25-151-SLP |
| ) | |
| **ABDULLAH HAJI ZADA,** ) | |
| ) | |
| **Defendant.** ) | |

**UNITED STATE'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

The United States submits this response to Abdullah Haji Zada's Sentencing Memorandum (Doc. 24) to assist the Court in fashioning a correct and appropriate sentence. Mr. Haji Zada has pled guilty to one count of receiving, attempting to receive, and conspiring to receive a firearm and ammunition knowing and having reasonable cause to believe that the firearm and ammunition would be used to commit a Federal crime of terrorism. The United States believes that a sentence at the top of the guideline—the statutory maximum—is appropriate and necessary to protect the public, reflect the seriousness of the offense, afford adequate deterrence, and provide just punishment.

Mr. Haji Zada's Sentencing Memorandum (Doc. 24) admits that he participated in a conspiracy to receive firearms "to attack innocent civilians on election day at some unknown location." (Doc. 24 at 10.) Despite this admission, Mr. Haji Zada goes to great lengths to distance himself from the conduct of his conviction, even teetering on the line of demonstrating a lack of acceptance of responsibility. He portrays himself as simply following the direction and control of his co-conspirator, Nasir Ahmed Tawhedi. He would

have this Court believe that he blindly followed Mr. Tawhedi without any knowledge of the plan to murder hundreds of people "until just shortly before the purchase [of the *two* AK-47 rifles, 500 rounds of ammunition, and ten magazines]." He claims it was only then that it was explained to him for the first time that the firearms were not for recreational shooting, but for committing a terrorist attack on behalf of ISIS.[1]  (Doc. 24 at 12.)  This assertion does not correspond to the evidence.

Mr. Haji Zada falsely claims to have no extremist propaganda on his devices.  His device, however, contains two images displaying the Tawhid finger in messages to his sister.[2]  The Tawhid finger is used outside of ISIS but, as noted in the United States' sentencing memorandum (Doc. 23), it is also a hallmark for ISIS militants, who use the gesture to signify the oneness of God in Islam.  Mr. Haji Zada acknowledges that "other radical material or expression of belief" would indicate an extremist intent behind the Tawhid gesture. (Doc. 24 at 2.) He overlooks that at his change of plea, Mr. Haji Zada admitted that he intended to conduct an attack to kill others on Election Day *on behalf of ISIS*.  Additionally, FBI located on his device a screenshot of a YouTube video of Abdul Zahir Da'i sent by Mr. Haji Zada's sister.  "According to CTC Sentinel Volume 17, Issue

---

[1] This statement of Mr. Haji Zada "told to counsel" as well as his claim as to why he researched the term "ISIS" have been given to the United States for the first time in his pleading and have not, nor will they be, subject to cross examination.  These statements are self-serving hearsay.  *See* Doc. 24 at 2, 12.

[2] Counsel states that he was only able to locate one image, but there is in fact a second image (an emoji) in the same document.  TAW_029527.  Further in the same document is an image of a man holding the Tawhid finger and the message contains a URL to a WhatsApp chat invite.  TAW_029534.

5 of the Combating Terrorism Center at West Point published in May 2024, the Islamic State Khorasan's (ISK) Central Asian-focused propaganda channels widely share sermons of Abdul Zahir Da'i." TAW_029528. This is the same person, although a different image, that Mr. Haji Zada acknowledges one of his other sisters sent to the family WhatsApp group chat depicting him holding the Tawhid finger and described by Mr. Haji Zada as an "extremist image…consistent in tone with the other material." (Doc. 24 at 3, FN 3.) There are also two searches for ISIS in Mr. Haji Zada's search history. It is clear that these are two unique searches because in one instance "ISIS" is in all caps and in the other "isis" is lowercase. *See* PSR, ¶33 (disclosed to Defendant in TAW_027027). This is just a part of the evidence against Mr. Haji Zada, but even this would seem to satisfy his self-imposed standard of "other radical material or expression of belief" which would indicate an extremist intent.

    Mr. Haji Zada attempts to focus the Court solely on his co-conspirator Mr. Tawhedi, who the evidence clearly demonstrates is a radical Islamic Jihadist with allegiance and motivations to act on behalf of ISIS. But Mr. Tawhedi's allegiance to ISIS is already well known and not in dispute. Mr. Haji Zada does not dispute that by the time *he* purchased an AK-47 from an FBI undercover *he* knew about the planned terrorist attack on Election Day. Mr. Haji Zada deflects to Mr. Tawhedi and seems to be asking the Court to determine who is the bigger terrorist. It does, of course, make sense that every terrorist becomes radicalized by someone else. People are not born with the preconceived notions of hate towards others and desires to do harm. That Mr. Tawhedi was able to recruit Mr. Haji Zada and convince him to participate in the scheme does not absolve Mr. Haji Zada of

3

culpability. In addition, Mr. Haji Zada has already received a more favorable plea deal to account for his age and role in the conspiracy.

Mr. Haji Zada cites extensively to a report from Dr. Mary Beth Altier. Significantly, however, Dr. Altier never spoke with Mr. Haji Zada. According to Dr. Altier's analysis, the path to deradicalization seems to, at least partially, rely on the honesty of the person in question as they must "process their involvement in violent extremism." (Doc. 24-1 at 5.) The report further states that Mr. Haji Zada portrays himself as someone who due to age, inexperience, and culture among other factors "shows compliance with another's instructions, not independent purpose." (Doc. 24 at 1.) The United States has already detailed in its sentencing memorandum (Doc. 23) numerous instances in which Mr. Haji Zada took on his own role in this conspiracy—raising money, filing false insurance claims, providing translation services, conducting online research, assisting in the obtaining of a passport, purchasing plane tickets, and retrieving money to purchase his AK-47 just to name a few. But his mindset can also be demonstrated in his interview with the FBI (attached hereto as Exhibit 1 - SEALED). During the interview, Mr. Haji Zada denies even the most basic information. He claims to not speak Dari even after being confronted with messages in Dari on his own phone. He denies knowing what ISIS is. He maintains the AK-47s were merely for recreational purposes.

During his interview with the FBI, Mr. Tawhedi also initially claimed the two AK-47s were purchased for recreational use. As the interview continued, Mr. Tawhedi eventually admitted the firearms were intended for use in a terrorist attack, but he remained protective of others. For example, Mr. Tawhedi denied that his brother in France knew

anything about what he was doing.  Documents later revealed that Mr. Tawhedi's brother sent him messages such as a video depicting a football (soccer) stadium and a shopping center stating, "this is a good place to shoot."  After Mr. Tawhedi's brother was arrested temporarily in early October 2024, he sent Mr. Tawhedi a message stating, "erase everything you have in your phone (…) I am cleaning house."  Mr. Tawhedi told him to not use Telegram.  Thus, it is not surprising that Mr. Tawhedi would have been similarly protective of his brother-in-law Mr. Haji Zada, and his statements cannot be relied upon to absolve Mr. Haji Zada of culpability.

Moreover, near the end of Mr. Haji Zada's interview with the FBI, agents separately brought Mr. Haji Zada's father and Mr. Tawhedi in to see Mr. Haji Zada.  Both men encouraged Mr. Haji Zada to tell the truth to the interviewing agents.  Mr. Haji Zada refused to tell the truth, instead insisting that the AK-47s were for target practice.  His refusal to comply with his father and Mr. Tawhedi's directive to "tell the truth" contradicts the narrative that his conduct was merely the result of subservience and cultural obligation.  Although Mr. Tawhedi initially minimized his own conduct, he eventually provided truthful details about his own and Mr. Haji Zada's roles in the planned attack. After Mr. Tawhedi attempted but failed to convince Mr. Haji Zada to be truthful in his interview with the FBI, Mr. Tawhedi told agents "whatever I've told you about him is true," referring to Mr. Haji Zada's role in and knowledge of the attack.

Mr. Haji Zada further asks the Court to view every fact in isolation and consider possible benign explanations.  But the Court must review the evidence in its totality.  When viewed in the totality, and considering Mr. Haji Zada's *admission* that he agreed to

5

purchase firearms for use in a terrorist attack, the potentially benign explanations for the evidence fall away.

He claims to not have ISIS extremist propaganda on his devices, but even if he does, he was young. He claims by January 2023, his role in the family was "cement[ed]" as to let Mr. Tawhedi assume the role as the father figure. But a voicemail from his sister on August 22, 2023, says that Mr. Haji Zada is the father of the family in the absence of their father.[3] TAW_032241.

Section 3553(a) states that the Court should consider the history and characteristics of the defendant. 18 U.S.C. § 3553(a). But this is just one of the factors to be weighed in determining an appropriate sentence. Mr. Haji Zada asks the Court to give him a below-guideline sentence based on his age and the influence of Mr. Tawhedi. For the reasons set forth in the Government's Sentencing Memo (Doc. 23), the Court should consider *all* 3553(a) factors and sentence Mr. Haji Zada to the statutory maximum. That is the only sentence that protects the public, reflects the seriousness of the offense, affords adequate deterrence, and provides just punishment.

In the wake of all mass murders (or attempts) it is not only common, but natural to ask, "Why did this happen?" It is unfathomable to understand how a person reaches a point to want to inflict devastation on his fellow man. But whether it is ideological differences, the influence of others, or a combination of factors one thing remains true—Abdullah Haji

---

[3] FBI's Language Services Section completed a preliminary review of the messages on Mr. Haji Zada's telephone. These translations have not yet been subjected to peer review and revision.

Zada agreed to commit a terrorist attack that intended to kill as many people as possible. For that reason alone, the Court should sentence him at the top of the statutory range.

        Respectfully submitted,

        ROBERT J. TROESTER
        United States Attorney

        s/ MATT DILLON
        MATT DILLON, OBA #19321
        JESSICA L. PERRY, OBA #22681
        Assistant United States Attorneys
        210 Park Ave., Suite 400
        Oklahoma City, OK 73102
        (405) 553-8700 (Office)
        Matthew.Dillon@usdoj.gov
        Jessica.Perry2@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 14, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: Jeffrey Byers and Kiefer Rose

        s/MATT DILLON
        Assistant U.S. Attorney